Filed 7/8/16  P. v. Garrett CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JONATHAN KEITH GARRETT,<br><br>  Defendant and Appellant. | D069506<br><br><br>(Super. Ct. No. SCD263047) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Jonathan Keith Garrett of corporal injury to a romantic partner (Penal Code, § 273.5, subd. (a))[1] and false imprisonment by violence or menace

---

1    Further statutory references are to the Penal Code unless otherwise specified.

(§§ 236, 237, subd. (a)).  The jury found Garrett not guilty of making a criminal threat (§ 422) and witness intimidation (§ 136.1, subd. (b)(1)).

Following Garrett's admission of a prior serious felony conviction under section 667, subdivision (d), the court sentenced Garrett to a determinate term of six years imprisonment.  The six-year sentence represented the middle term of three years for the corporal injury conviction, doubled under section 667, subdivision (e)(1).  The court also sentenced Garrett to the middle term of four years for his conviction for false imprisonment, which it stayed under section 654.

Garrett appeals.  Garrett's appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) stating that she is unable to find any reasonably arguable issues for reversal on appeal.  Garrett's counsel asks this court to review the record independently for error, as required by *Wende*.  We granted Garrett the opportunity to file a supplemental brief on his own behalf.  He has not responded.  We have independently reviewed the record under *Wende* and have found no reasonably arguable issues for reversal on appeal.  We therefore affirm.

## FACTS

For purposes of this section, we state the evidence in the light most favorable to the judgment.  (See *People v. Osband* (1996) 13 Cal.4th 622, 690; *People v. Dawkins* (2014) 230 Cal.App.4th 991, 994.)

Garrett and Alexis Kinsman met through mutual friends and corresponded on Facebook.  After a few weeks, they began a romantic relationship.  One night, Garrett

2

cooked dinner, and he became angry with Kinsman because she did not finish eating her food. Garrett threw Kinsman against a wall and threatened to kill her. Kinsman ran out of her apartment and encountered a neighbor. Kinsman asked the neighbor, Seth Woolsey, to call police. Woolsey asked what was wrong, and Kinsman said her boyfriend had attacked her. Kinsman touched her head and showed Woolsey blood on her hand. Garrett fled. Police arrived, and Kinsman told them Garrett's first name. She was unable to provide any other information about him.[2]

Kinsman eventually forgave Garrett and began to see him again romantically. He was irrationally jealous, however, and frequently accused her of cheating on him with other men. On the evening of July 21, 2015, Garrett was at Kinsman's apartment. Kinsman went out to buy a pack of cigarettes. Garrett became upset when Kinsman returned because she did not buy Garrett's brand. Garrett called Kinsman names, and she became frightened. She went into her bedroom and texted her mother.

Garrett accused Kinsman of texting another man. He took Kinsman's phone and began to strangle her. Kinsman was in pain and could not breathe. She vomited a few times. Garrett stopped and apologized, but then he began to strangle her again. Garrett alternately apologized and strangled Kinsman several times. At one point, Garrett put on some cloth gloves and said, "Bitch, this is how I kill bitches like you." The attacks continued for at least 15 to 20 minutes.

---

[2]     Evidence of this incident, for which Garrett was not charged, was admitted at trial under Evidence Code section 1109.

Eventually Garrett appeared to calm down. Kinsman agreed to drive Garrett to an appointment in order to get him out of her apartment. On the way, Kinsman stopped at a store to buy Garrett the cigarettes that he wanted. While they were driving, Garrett asked to stay at Kinsman's apartment again that night. Kinsman said she did not think that was a good idea, and Garrett became angry again. He threatened to beat her up and leave her on the side of the road if she did not turn the car around. Kinsman turned back to her apartment.

When they arrived at Kinsman's apartment, she asked for her phone back. Garrett said he would give Kinsman her phone back if she unlocked her apartment door. Kinsman was afraid to go back inside the apartment with Garrett, so she went to a neighbor's apartment and knocked on the window. Garrett followed her. Kinsman yelled, "Call 911, he's choking me!" The neighbor saw Garrett shove Kinsman against the window. He called police.

Kinsman ran to a nearby convenience store. Garrett followed her. Kinsman asked for her phone again, but Garrett threw it to the ground. Inside the convenience store, Kinsman spoke to the clerk. The clerk handed a phone to Kinsman, and she dialed 911. The clerk noticed that Garrett was staring intensely at Kinsman. Kinsman told the 911 operator that Garrett had choked her. Garrett left the store, and police arrived soon afterward.

Kinsman had bruising on her neck, but she declined medical attention. She asked the police officers to accompany her back to her apartment. Once she arrived at the

4

apartment, she gathered some belongings and went to stay with her mother. Police officers were unable to locate Garrett.

The next day, Kinsman went back to her apartment during her lunch break to get some clothing. She found Garrett there and called police. Police officers arrived and arrested Garrett.

At trial, Kinsman, her neighbor, the convenience store clerk, and a police officer testified. Garrett did not testify. Garrett's counsel questioned Kinsman's credibility and argued that the prosecution had not met its burden of proof.

### DISCUSSION

As we have noted, Garrett's appellate counsel has filed a brief pursuant to *Wende*, *supra*, 25 Cal.3d 436, and *Anders*, *supra*, 386 U.S. 738, stating that she was unable to find any reasonably arguable issues for reversal on appeal. Garrett's counsel has identified 12 possible, but not arguable, issues under *Anders*: (1) "Was there arguably insufficient evidence of a traumatic condition?" (2) "Was there arguably insufficient evidence of felony false imprisonment?" (3) "Did the court arguably err in failing to sua sponte instruct on the lesser included offense of misdemeanor domestic battery?" (4) "Did the court arguably err in failing to provide a unanimity instruction on the charge of false imprisonment?" (5) "If the court erred in failing to provide a unanimity instruction on the charge of false imprisonment, was the error arguably prejudicial?" (6) "Did the court arguably err in failing to sua sponte instruct on the lesser offense of misdemeanor false imprisonment?" (7) "Did the court arguably err in finding [a] preponderance of evidence [to support] a 'dating relationship' for purposes of allowing

5

prior domestic violence evidence to prove propensity?" (8) "Did the court arguably abuse its discretion in overruling the defense objection under Evidence Code section 352 to the propensity evidence?" (9) "If the court's [Evidence Code section] 352 ruling was not an abuse of discretion, is review of the issue of deprivation of due process by using propensity evidence as proof of guilt arguably forfeited by failure to object?" (10) "Did the court arguably abuse its discretion under section 1385 when the court denied Garrett's *Romero*[3] motion?" (11) "Did the court arguably err in awarding victim restitution to the Victim's Compensation Claims Board for victim's counseling?" (12) "If the court arguably erred in awarding victim restitution to the Victim's Compensation Claims Board for victim's counseling, was review of this error waived by defense counsel's stipulation?"

We have independently reviewed the record under *Wende* and have considered the possible issues identified by Garrett's counsel. We have found no reasonably arguable issues for reversal. Competent counsel has represented Garrett in this appeal.

---

3     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

6

DISPOSITION

The judgment is affirmed.


                                                                    AARON, J.

WE CONCUR:



HALLER, Acting P. J.



McDONALD, J.